No. 25-4280

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FOIACONSCIOUSNESS.COM, LLC,

Plaintiff-Appellant,

v.

NATIONAL ARCHIVES & RECORDS ADMINISTRATION, et al.,

Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of California

## BRIEF FOR APPELLEES

*Of Counsel:*

KATHRYN ARDIZZONE
  *Assistant General Counsel*
  *Office of General Counsel, Suite 3110*
  *National Archives & Records*
    *Administration*
  *8601 Adelphi Road*
  *College Park, MD 20740*
  *(301)-837-1750*

BRETT A. SHUMATE
  *Assistant Attorney General*

CRAIG H. MISSAKIAN
  *United States Attorney*

DANIEL TENNY
AMANDA L. MUNDELL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7252*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3469*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

STATEMENT OF JURISDICTION .......................................................................... 1

STATEMENT OF THE ISSUE .................................................................................. 1

PERTINENT STATUTES .......................................................................................... 1

STATEMENT OF THE CASE .................................................................................... 1

      A.     Statutory Background ................................................................................. 1

      B.     Factual Background .................................................................................... 3

           1.     The Zapruder Film And Its Versions ................................................. 3

           2.     Access To And Reproduction Of The Zapruder Film And Versions Of It ................................................................................. 5

           3.     Plaintiff's FOIA Request And NARA's Response .......................... 6

      C.     Prior Proceedings ...................................................................................... 8

SUMMARY OF ARGUMENT .................................................................................. 10

STANDARD OF REVIEW ........................................................................................ 11

ARGUMENT .............................................................................................................. 11

NARA's Response Satisfied FOIA, And The Records Are Not Readily Reproducible In One Of The Forms Plaintiff Seeks ............................................. 11

CONCLUSION ........................................................................................................... 20

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

ADDENDUM

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Animal Legal Def. Fund v. U.S. Food & Drug Admin.*,
836 F.3d 987 (9th Cir. 2016) ................................................................... 11

*Department of the Air Force v. Rose*,
425 U.S. 352 (1976) ................................................................................. 16

*Gilmore v. U.S. Dep't of Energy*,
4 F. Supp. 2d 912 (N.D. Cal. 1998) ....................................................... 17

*Long v. Immigration & Customs Enf't*,
149 F. Supp. 3d 39 (D.D.C 2015) .......................................................... 17

*Naumes v. Department of the Army*,
588 F. Supp. 3d 23 (D.D.C. 2022) .................................................. 15, 16-17

*NLRB v. Robbins Tire & Rubber Co.*,
437 U.S. 214 (1978) ................................................................................. 16

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 143 n.10 (1975) ................................................................. 19

*Sample v. Bureau of Prisons*,
466 F.3d 1086 (D.C. Cir. 2006) .............................................................. 17

*Scudder v. CIA*,
25 F. Supp. 3d 19 (D.D.C. 2014) .................................................. 17, 17-18

*Time Inc. v. Bernard Geis Assocs.*,
293 F. Supp. 130 (S.D.N.Y. 1968) ...................................................... 3, 4

*TPS, Inc. v. U.S Dep't of Def.*,
330 F.3d 1191 (9th Cir. 2003) ........................................................... 12, 17

*U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*,
489 U.S. 749 (1989) ........................................................................... 11, 16

*Watt v. Alaska*,
451 U.S. 259 (1981) ................................................................................. 16

*Weisberg v. U.S. Dep't of Just.*,
631 F.2d 824 (D.C. Cir. 1980) ................................................................ 18

**Statutes:**

Copyright Act:
  17 U.S.C. § 106(1) ................................................................................. 2, 14
  17 U.S.C. § 107 ........................................................................................ 19
  17 U.S.C. § 107(4) ................................................................................... 19
  17 U.S.C. § 108(a) ................................................................................... 14
  17 U.S.C. § 108(f) .................................................................................... 14
  17 U.S.C. § 108(f)(1) ................................................................................. 2
  17 U.S.C. § 501 ........................................................................................ 14
  17 U.S.C. § 501(a)-(b) .............................................................................. 14

Freedom of Information Act (FOIA):
  5 U.S.C. § 552(a)(3) ................................................................................. 19
  5 U.S.C. § 552(a)(3)(A) ....................................................................... 3, 11-12
  5 U.S.C. § 552(a)(3)(B) ............................................................ 3, 10, 12, 14, 15
  5 U.S.C. § 552(a)(4)(B) ................................................................... 1, 15, 19

President John F. Kennedy Assassination Records Collection Act of 1992,
  Pub. L. No. 102-526, 106 Stat. 3443 ........................................................ 4

28 U.S.C. § 1291 ......................................................................................... 1

28 U.S.C. § 1331 ......................................................................................... 1

28 U.S.C. § 1498(b) ............................................................................... 2, 14

**Regulation:**

36 C.F.R. § 1254.62 ..................................................................................... 2

**Rule:**

Fed. R. Civ. P. 19(b) .................................................................................. 18

**Other Authorities:**

*Formal Determinations, Releases, Assassination Records Designation,
  and Reconsideration*, 62 Fed. Reg. 27,008 (May 16, 1997) ............................ 4

NARA:
*National Archives Frequently Asked Questions*,
https://perma.cc/C4LT-67AY ............................................................... 5
*Permissions / Rights for Use of Special Media Records at NARA*,
https://perma.cc/FVA9-VVGW ............................................................ 2
*Source and Permission Contact List*, https://perma.cc/7XDX-M8Z2 ............................ 2
*What's an Archives?*, https://perma.cc/4GGX-9NLW ................................................. 1

The Sixth Floor Museum at Dealey Plaza, *Abraham Zapruder Film*,
https://perma.cc/8NX6-FZ3W ..................................................................... 3

## STATEMENT OF JURISDICTION

The district court had jurisdiction in this Freedom of Information Act (FOIA) case under 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). ER-255. Plaintiff filed a timely notice of appeal on July 10, 2025, 10 days after the district court entered final judgment. ER-266. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the National Archives and Records Administration (NARA) complied with FOIA's requirements when it informed plaintiff that plaintiff could make self-serve copies of copyrighted materials in NARA's possession at plaintiff's own risk but that plaintiff would need to secure permission from the copyright holder if plaintiff wanted NARA to facilitate the reproductions using NARA's own vendors.

## PERTINENT STATUTES

Pertinent statutes are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.      Statutory Background

This case concerns records held by the National Archives and Records Administration that contain copyrighted material. The National Archives is "the U.S. Government's collection of documents that records important events in American history," and NARA "is the Government agency that preserves and maintains these materials and makes them available for research." NARA, *What's an Archives?*, https://perma.cc/4GGX-9NLW. Although "[m]aterials created and produced by

United States federal agencies, or by an officer or employee of the United States Government as part of that person's official duties," are not subject to copyright, "not all records in the holdings of [NARA] … are in the public domain." NARA, *Permissions / Rights for Use of Special Media Records at NARA*, https://perma.cc/FVA9-VVGW. Indeed, NARA possesses "records and donated historical materials [that] do have copyright protection." 36 C.F.R. § 1254.62. These sources range from widely used stock photo firms like Getty Images and National Geographic, to the holders of the rights to newsreels produced by companies like Paramount and Fox, to museums such as the Museum of Modern Art and the United States Holocaust Memorial Museum. NARA, *Source and Permission Contact List*, https://perma.cc/7XDX-M8Z2.

The Copyright Act gives a copyright owner "exclusive" rights to reproduce or authorize reproductions of copyrighted works. 17 U.S.C. § 106(1). Congress has waived the federal government's sovereign immunity for claims of copyright infringement, 28 U.S.C. § 1498(b), but exempts libraries and archives from liability "for the unsupervised use of reproducing equipment located on its premises" if the "equipment displays a notice that the making of a copy may be subject to the copyright law." 17 U.S.C. § 108(f)(1). Accordingly, NARA instructs the public that they "are responsible for obtaining any necessary permission for use, copying, and publication from copyright holders and for any other applicable provisions of the Copyright Act." 36 C.F.R. § 1254.62. And, as explained in more detail below, NARA generally requires

a researcher to obtain permission from the copyright owner before NARA or its vendors fill orders for reproduction requests.

FOIA provides for mandatory disclosure of government records to the public, subject to several enumerated exemptions. If no exemption to disclosure applies, upon a request that "reasonably describes such records and … is made in accordance with published rules," the agency "shall make the records promptly available." 5 U.S.C. § 552(a)(3)(A). FOIA further provides that in making the records available, the agency "shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format." *Id.* § 552(a)(3)(B). This appeal concerns the intersection of the Copyright Act and FOIA.

**B.    Factual Background**

**1.    The Zapruder Film And Its Versions**

The Zapruder Film is an 8mm film strip that depicts the assassination of President John F. Kennedy on November 22, 1963. ER-188, ER-203. It was shot at Dealey Plaza in Dallas, Texas by Abraham Zapruder using his home movie camera. The Sixth Floor Museum at Dealey Plaza, *Abraham Zapruder Film*, https://perma.cc/8NX6-FZ3W; *see also Time Inc. v. Bernard Geis Assocs.*, 293 F. Supp. 130, 133 (S.D.N.Y. 1968). Mr. Zapruder had the film developed and made three color copies of the film on the day of the shooting. *Time Inc.*, 293 F. Supp. at 133. Shortly after the assassination, Mr. Zapruder turned over two copies of the film to the Secret Service, "specifying that it was strictly for government use and not to be shown to

3

newspapers or magazines because he expected to sell the film." *Id.* Mr. Zapruder also entered a license agreement with Time, Inc. ER-216.

After Mr. Zapruder passed away, Time, Inc. returned custody of the film to the Zapruder family, and the family, in turn, deposited the original out-of-camera version of the film with NARA, providing NARA with only a limited possessory right without transferring copyright protection. ER-203-204.

In 1992, President George H.W. Bush signed into law the President John F. Kennedy Assassination Records Collection Act of 1992, Pub. L. No. 102-526, 106 Stat. 3443 (JFK Act or Act). The Act "provide[d] for the creation of the President John F. Kennedy Assassination Records Collection at [NARA]" and "requires the expeditious public transmission to the Archivist and public disclosure of such records," *id.* § 2(b)(1)-(2), 106 Stat. at 3443, as well as copying, *id.* § 4(b), 106 Stat. at 3446. Section 7 of the JFK Act created an Assassination Records Review Board (ARRB) to administer the statute.

The ARRB designated "the out-of-camera original Zapruder Film currently housed at the National Archives" as an "assassination record" and directed the film to be transferred to the JFK Collection at NARA. *Formal Determinations, Releases, Assassination Records Designation, and Reconsideration*, 62 Fed. Reg. 27,008 (May 16, 1997); *see also* ER-207. To determine "just compensation" for the government's "taking of the private property of [the Zapruder Family] pursuant to the [JFK Act]," the federal government and the Zapruder family engaged in arbitration. ER-209-228. The parties

4

agreed that the family retained copyright ownership in the original film, and the arbitration panel awarded the family $16 million in compensation. ER-209-228. The family then donated their copyright in the film to the Sixth Floor Museum at Dealey Plaza in Dallas, Texas. SER-20; ER-190-191.

The original Zapruder Film spurred reproductions and derivative works created by federal agencies, private citizens and non-federal institutions, and NARA itself. *See* ER-193-194. This appeal concerns two versions of the film created by Moses Weitzman, a special effects film expert who enlarged the original Zapruder Film and donated a copy to the JFK Collection: a VHS copy of the film Weitzman created and a second version of the same film with certain manipulations done by a NARA employee to slow down and stop the film at various points. ER-194-196.

### 2. Access To And Reproduction Of The Zapruder Film And Versions Of It

NARA holds both the original Zapruder Film and several derivative versions of it, including the two Weitzman versions at issue here. NARA makes reference copies of these films available to the public in its research room in College Park, Maryland. ER-191. At that facility, researchers are permitted to make "copies on a self-serve basis for the researcher's own use."[1] ER-191. Researchers who do not wish to visit the

---

[1] To prevent damage or loss of materials in NARA's possession and unauthorized use of copyrighted works, NARA does not permit members of the public to take reference copies of film materials out of its College Park facility. NARA, *National Archives Frequently Asked Questions*, https://perma.cc/C4LT-67AY. Any self-serve copies must be made in the research room.

facility in person may also retain vendors to make self-serve copies in the research room on their behalf. ER-192. NARA also provides vendors who can provide high-quality copies upon request. ER-192.

For NARA-facilitated vendor orders—but not requests for self-serve copies—NARA "reserves the right to require permission from rights holders to approve vendor order requests where the rights holder is known or can be determined through materials available to NARA staff." ER-192-193. NARA knows that the rights' holder for the Zapruder Film is the Sixth Floor Museum, so it "requires permission in writing from the museum to proceed with filling a vendor reproduction order for any requester." ER-194. NARA fills the order once it has been notified of the museum's approval. ER-194. To NARA's knowledge, the museum has never denied a vendor reproduction request. ER-194. Indeed, the museum "typically grants licensing requests free of charge to researchers or others with an academic interest, but may charge a licensing fee for commercial use of the film." SER-21.

### 3. Plaintiff's FOIA Request And NARA's Response

Plaintiff FOIAConsciousness.com, LLC (FOIAConsciousness) is "a website that permits users to discuss and develop FOIA requests anonymously." ER-110. Plaintiff's counsel emailed NARA and requested "copies" of two versions of the Zapruder film: "Moses Weitzman's Version of the Abraham Zapruder Film" and "Moses Weitzman's Version of the Abraham Zapruder Film with Manipulations Done at the National Archives." ER-248. Plaintiff alleges that it sought access to these

6

versions of the film "so that it may inform the public about the Zapruder film." ER-91.

In response, NARA notified plaintiff's counsel that reference copies of the films he had requested were available in NARA's research room. ER-245; ER-238. Initially, NARA explained that "permission to reproduce the Zapruder Film must be obtained from Sixth Floor Museum before copies may be made in the research room or purchased through [NARA's] vendor order process." ER-245-246. Four days later, having realized that the initial response neglected to mention the option to make a self-serve copy, NARA "apologize[d] for the confusion" and clarified that "[n]o permissions are required to access the reference copies and screen them in [NARA's] research room," that "researchers have been able to make copies [of the films] in [the] research room" on a "self-serve basis," and that plaintiff's counsel "could do the same." ER-238.

FOIAConsciousness did not avail itself of the self-serve process or NARA's vendor-order process. *See* ER-260. Instead, it filed an administrative appeal, alleging that NARA had "failed to produce a copy of the film and … failed to cite any FOIA exemptions that would be required to withhold production." ER-245.

## C.    Prior Proceedings

When NARA did not resolve plaintiff's appeal within FOIA's time limits, plaintiff filed suit in district court alleging that NARA had improperly withheld the versions of the Zapruder film that he had requested under FOIA.[2]  ER-263.

The government moved for summary judgment, arguing that NARA complied with FOIA's requirements because the requested NARA-facilitated copies are not "'readily reproducible'" absent consent from the copyright holder.[3]  ER-179-181.  In response, plaintiff disclaimed an intent to "impose [upon] NARA [to] make any copies," stated that it was "willing to pay for its own copies or to hire its own vendor" to make copies, and that NARA violated FOIA by failing to "provide[] a quote and order form for Plaintiff to fill out and order a copy."  ER-94; ER-13.  *But see* ER-13 n.1 ("Plaintiff seeks to order and pay for a copy of the videos pursuant to the traditional FOIA process which he has accomplished in the past by filling out the U.S. National Archives & Records Administration Quotation for Reproduction Services.  If this is called 'NARA-

---

[2] Plaintiff named the Sixth Floor Museum as respondent pursuant to Federal Rule of Civil Procedure 19, and the museum moved to dismiss for lack of personal jurisdiction, SER-3-18.  After the district court expressed doubt about personal jurisdiction over the museum, plaintiff voluntarily dismissed the museum.  ER-5 n.1. Because the museum was not a party to the suit, the district court did not address the validity of its copyright and "assume[d] without deciding that the failure to join the asserted copyright holder does not require the action be dismissed pursuant to Fed. R. Civ. P. 19(b)."  ER-6-7.

[3] The government also argued in the alternative that such copies were exempt from disclosure under FOIA Exemption 4.  ER-181-184.  The district court declined to address this argument.  ER-7.

8

made copy,' then that is indeed what Plaintiff seeks."). Plaintiff also argued that NARA had acted arbitrarily and capriciously, denied the existence of any copyright protection over the films, and accused the government of "conceal[ing] the truth" about the assassination "from the American people." ER-94-108.

The district court granted summary judgment in favor of the government. ER-7. At the outset, the court concluded that "[t]he record establishes that NARA generally followed proper FOIA procedures." ER-5. The court acknowledged the "undisputed evidence" that FOIAConsciousness "was properly advised" that it could visit NARA's Maryland facility to make self-serve copies, hire a vendor to make self-serve copies on its behalf, or avail itself of NARA's vendor-order process for a NARA-facilitated copy of the films. ER-4. The court also rejected FOIAConsciousness's argument that NARA "should have provided a quote and order form for Plaintiff to fill out and order a copy," explaining that "NARA has no legal obligation to act as [FOIAConsciousness's] personal assistant." ER-4 (quotation marks omitted).

The district court further concluded that "NARA did not violate FOIA by requiring proof of permission from a copyright holder before facilitating the copying of copyrighted material because such copies, of which NARA facilitates the reproduction, are not 'readily reproducible' in the absence of permission." ER-5-6. Relying on the government's "[u]nrebutted" declaration laying out the relevant procedures, the court explained that "a failure by NARA to respect third-party's copyrights would undermine its operations and 'make it more difficult for NARA to

9

work with potential donors … [and] administer Federal records holdings that contain copyrighted materials.'" ER-5 (second and third alterations in original). The court observed that plaintiff had not "identif[ied] anything in FOIA or the caselaw to indicate that Congress intended a records designation to trump copyrights held by third parties" and "did not say why FOIA would require agencies to produce copies in a manner that would open them up to liability under the copyright laws." ER-6. Moreover, the court explained, "[t]here is no evidence that [plaintiff] asked the Museum for permission to copy at any point or that doing so would be futile." ER-6.

The district court rejected plaintiff's contention that "NARA is using a 'sham' copyright assertion to suppress the truth" about JFK's assassination, concluding that the "record … demonstrates otherwise." ER-6. The court also declined to address the plaintiff's other "unsubstantiated and irrelevant allegations of cover-ups and government malfeasance." ER-7.

## SUMMARY OF ARGUMENT

The district court correctly granted summary judgment in the government's favor. FOIA directs agencies to make their records available "in any form or format requested by the person if the record is readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B). NARA has made the Zapruder Film and its derivatives available for viewing and self-serve copying in its research room, and plaintiff has expressed a willingness to obtain copies through this process. *See* Br. 11. Plaintiff offers no explanation why that regime would not satisfy its FOIA request.

10

Insofar as plaintiff seeks a NARA-made or NARA-facilitated copy of the films, NARA properly informed plaintiff that it could not reproduce the films absent permission from the copyright owner. As the district court correctly concluded, the films are not "readily reproducible by the agency" if it would be unlawful under the copyright laws for NARA to reproduce them.

Plaintiff's contrary reading of FOIA's requirements would work an end-run around the Copyright Act's protections and risk subjecting the federal government to liability for copyright infringement. Congress could not have intended either result, and NARA's access regime appropriately balances the agency's coexisting obligations to the public under FOIA and to the rights holder under the Copyright Act.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment in a FOIA case de novo. *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 988-90 (9th Cir. 2016) (en banc) (per curiam).

## ARGUMENT

## NARA'S RESPONSE SATISFIED FOIA, AND THE RECORDS ARE NOT READILY REPRODUCIBLE IN ONE OF THE FORMS PLAINTIFF SEEKS

Designed to ensure that citizens have an opportunity to see "what their government is up to," FOIA requires federal agencies to make agency records, absent an applicable exemption, available on request. *U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (quotation marks omitted); *see also* 5 U.S.C.

11

§ 552(a)(3)(A). There is no dispute here that NARA made the requested records available to plaintiff by identifying the room in which they could be found and authorizing plaintiff, or a vendor acting on plaintiff's behalf, to access them. FOIA also generally directs that an agency must make its records available "in any form or format requested by the person if the record is readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B); *see also TPS, Inc. v. U.S Dep't of Def.*, 330 F.3d 1191, 1195 (9th Cir. 2003). As the district court correctly concluded, a record is not "readily reproducible by the agency" if it would be unlawful under the copyright laws for the agency to reproduce it. Because plaintiff did not obtain permission to reproduce a copyrighted work, NARA properly concluded that it would not reproduce the work for plaintiff.

1. In response to plaintiff's request for copies of certain films derived from the famous Zapruder Film, NARA notified plaintiff that the films were available to view in person at NARA's research room and that there were three ways to obtain copies of them: (1) plaintiff could make self-serve copies of the films itself, (2) plaintiff could hire a vendor to do so on its behalf, or (3) plaintiff could submit a NARA-facilitated vendor order for copies, although this option (and only this option) requires permission from the copyright owner before the order can be filled. Plaintiff's FOIA request did not specify what kinds of copies it wanted (self-serve or NARA-facilitated), but plaintiff's cross-motion for summary judgment explained that plaintiff was "willing … to hire its own vendor" to do the copying. ER-94-95.

12

On appeal, plaintiff nevertheless contends that NARA improperly withheld the films because of its policy requiring permission from the copyright owner before ordering copies prepared by one of NARA's vendors. *See* Br. 10-11. But that policy applies only to NARA-facilitated copies, so plaintiff's expressed willingness in its district-court filings "to pay for its own copies or to hire its own vendor" would appear to dispose of this case. ER-94 ("Plaintiff does not attempt to impose [upon] NARA [to] make any copies. … Plaintiff is willing to pay for its own copies or to hire its own vendor."). *But see* ER-13 n.1 ("Plaintiff seeks to order and pay for a copy of the videos pursuant to the traditional FOIA process which he has accomplished in the past by filling out the U.S. National Archives & Records Administration Quotation for Reproduction Services. If this is called a 'NARA-made copy,' then that is indeed what Plaintiff seeks.").

Plaintiff's appellate brief does not clarify matters, simultaneously claiming that plaintiff sought "to have NARA make a copy" of the films and reiterating its willingness to hire its own vendor to do the copying. Br. 11. Plaintiff does not explain why hiring its own vendor to make self-serve copies would not suffice to satisfy its FOIA request. NARA has not stopped plaintiff from hiring a vendor and making copies, and if plaintiff were to do so it would have no need for anything further from NARA.

2. In any event, the district court correctly concluded that NARA was not required to make or facilitate copies of the films without the Sixth Floor Museum's permission because the films are not "readily reproducible" in that format if the

13

Copyright Act prohibits NARA from reproducing them. 5 U.S.C. § 552(a)(3)(B). Under the Copyright Act, a copyright owner has "the exclusive right[] to … reproduce the copyrighted work." 17 U.S.C. § 106(1). Anyone who reproduces the work without authorization is an infringer and may be subject to civil or criminal liability. *See id.* § 501(a)-(b).

Congress has expressly waived sovereign immunity and subjected the United States to damages for copyright claims. *See* 28 U.S.C. § 1498(b). Congress has also specified the obligations of libraries and archives under the copyright laws, declining to exempt libraries from copyright liability for copies they make themselves except in limited circumstances, 17 U.S.C. § 108(a), but immunizing them from liability if they allow patrons to make copies with notice that copyright law may apply, *id.* § 108(f).

As discussed above, the Sixth Floor Museum, and not NARA, holds the copyright to the films at issue. Accordingly, as a general matter only the museum can reproduce the films or grant permission to others to do the same; absent permission from the museum, NARA (or its vendors) could face liability for copyright infringement for making or facilitating unauthorized copies apart from those that archives are expressly authorized to make under the Copyright Act (which do not encompass the copies contemplated here). *See* 17 U.S.C. §§ 108(a), 501; 28 U.S.C. § 1498(b); ER-192-193 (explaining that NARA faces potential legal exposure if it reproduces copyrighted works without authorization).

14

Plaintiff provides no basis for concluding that Congress meant to compel NARA to violate the copyright laws in order to comply with FOIA. As noted above, FOIA directs NARA, first and foremost, to make requested materials available upon request, and NARA has done so. To accommodate requesters, FOIA further directs agencies to make documents available "in any form or format requested" but only "if the record is readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B). Here, NARA quite reasonably determined that an unauthorized reproduction of a film that is subject to a known, in-force copyright is not "readily reproducible."

Congress expressly directed courts to give "substantial weight to an affidavit of an agency concerning the agency's determination as to … reproducibility," 5 U.S.C. § 552(a)(4)(B), but in any event the agency's determination would be correct even if the matter were reviewed de novo. As a matter of plain language, it would be odd to treat a course of action as "readily" available if engaging in the course of action would be unlawful and would subject the actor to liability for damages. Moreover, as a practical matter, Congress could not have intended for FOIA to "place agencies in the position of having to disclose information that could later lead to infringement suits." *Naumes v. Department of the Army*, 588 F. Supp. 3d 23, 40 (D.D.C. 2022) (applying FOIA Exemption 4).

More generally, statutes are not ordinarily read to impose conflicting obligations on federal agencies (or anyone else), and it would therefore be anomalous to construe FOIA to operate as a directive to the agency to commit copyright infringement. Rather,

15

even where two statutes appear to impose conflicting obligations, courts "must read the statutes to give effect to each if [it] can do so while preserving their sense and purpose." *Watt v. Alaska*, 451 U.S. 259, 267 (1981). The agency's understanding of "readily reproducible" harmonizes the two statutes: It safeguards the copyright owner's rights and avoids the risk of copyright infringement without diminishing plaintiff's access to the films in any meaningful way. As explained, the films are available for viewing and self-serve copying in NARA's reading room by plaintiff or anyone plaintiff hires who is willing to assume the risk of copyright infringement. Congress's purpose in enacting FOIA was to "ensure an informed citizenry," *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978), and "'open agency action to the light of public scrutiny,'" *Department of the Air Force v. Rose*, 425 U.S. 352, 261 (1976)—in other words, to give the public a chance to know "what their government is up to," *Reporters Comm.*, 489 U.S. at 773 (quotation marks omitted). FOIA was not enacted as a means to exploit government possession of copyrighted private works, and its purpose would not be served by requiring NARA to violate copyright holders' rights or subject itself to liability.

If plaintiff prefers to have NARA make a copy of these films for it through NARA's vendor-ordering process, NARA stands ready to comply as soon as the museum grants permission. Indeed, the museum has stated that it has freely granted more than a dozen such requests from researchers over the years. SER-21. Plaintiff has never sought the museum's permission and offers no reason why its request would

16

be treated any differently. And if the museum elected to charge a licensing fee, that would serve the purposes of the copyright laws, rather than allowing FOIA to become "an end run around the protections afforded by copyright." *Naumes*, 588 F. Supp. 3d at 37, 40 (explaining that "routine release of copyrighted information through FOIA requests would undermine the market for the creator's work"); *Gilmore v. U.S. Dep't of Energy*, 4 F. Supp. 2d 912, 923 (N.D. Cal. 1998) (explaining that free release of copyrighted materials would reduce the value of the copyright "to zero").

Plaintiff's brief arguments to the contrary are unpersuasive. For example, plaintiff contends that the films are "readily reproducible" because that term "actually refers to … the technical feasibility of making the requested copies," and "replicating DVDs and VHS tapes is not a burden." Br. 15-16. Plaintiff's cited cases focused on technical feasibility because that was the issue presented, but the language and logic of the cases is not so limited. For example, in *TPS, Inc.*, 330 F.3d at 1195, this Court stated that the FOIA regulations at issue in that case were designed to prevent requesters from "impos[ing] unreasonable or additional burdens on an agency's data system, personnel, or resources." Plaintiff does not explain why imposing copyright liability would not unreasonably burden NARA's resources. In *Sample v. Bureau of Prisons*, 466 F.3d 1086, 1088 (D.C. Cir. 2006), the D.C. Circuit held that prison records were readily reproducible in electronic format even though the recipient was not entitled to possess records in that format, a holding that has little relevance here. And in *Long v. Immigration & Customs Enforcement*, 149 F. Supp. 3d 39 (D.D.C 2015), and *Scudder v. CIA*, 25 F. Supp.

17

3d 19 (D.D.C. 2014), the district court in the District of Columbia stated that "'readily reproducible'" "is not … synonymous with 'technical[ly] feasible,'" instead considering "the burden on the defendant agency." *Long*, 149 F. Supp. 3d at 55; *Scudder*, 25 F. Supp. 3d at 38. Infringement liability would unquestionably be a burden, so those holdings support the government's position here, not plaintiff's.

Relying on *Weisberg v. U.S. Department of Justice*, 631 F.2d 824 (D.C. Cir. 1980), plaintiff contends that "[t]he proper way to object on copyright grounds" is not under FOIA's "readily reproducible" requirement but instead "under the exemptions to FOIA," which plaintiff contends do not apply. Br. 4, 11-12. If anything, that case suggests the opposite. The D.C. Circuit held in that case that an agency could not conclude that records were entirely exempt from FOIA merely because they were subject to copyright protection. But the court declined to address whether "FOIA requires the Government to furnish members of the public with copies of copyrighted materials on the same terms as any other 'agency records.'" 631 F.2d at 829. The court did so because the copyright owner had not been made a party to the lawsuit and any decision with respect to the disposition of the copyrighted material might subject the government to "conflicting legal obligations." *Id.* at 830. Accordingly, the court remanded to the district court to determine under Federal Rule of Civil Procedure 19(b) whether the case could proceed without the copyright owner or should instead be dismissed. Far from supporting disclosure, *Weisberg* makes clear that, at a minimum, courts should not mandate the release of copyrighted materials in response to a FOIA

18

request without first trying to secure the participation of the copyright owner in the suit. Plaintiff's insistence that NARA make unauthorized copies of the films puts *Weisberg*'s Rule 19 concerns at the fore. The agency's reading, however, avoids that procedural hurdle.

Plaintiff briefly suggests that NARA erred in requiring the museum's permission on the theory that he only sought "fair use" copies of the films and therefore no such permission was needed. *See* Br. 10-11. Even if that abbreviated argument is sufficient to present the issue for this Court's review, it is without merit. The relevant question would not depend on the use to which plaintiff intends to put the work—which NARA would have no way to confirm—but rather whether NARA's copying for purposes of providing the work to a FOIA requester is fair use under the copyright laws. *See* 17 U.S.C. § 107. As noted above, providing copies to FOIA requesters for free could undermine the market for the work and thus would arguably not qualify as fair use regardless of the use to which the requester ultimately put the work. *See id.* § 107(4) (fair-use determination depends, among other things, on the effect on the market for the work). And disclosure under FOIA has never been understood to depend on a requester's motivations. *See* 5 U.S.C. § 552(a)(3); *cf. NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 143 n.10 (1975). It was, at a minimum, reasonable for NARA to determine that it could not readily reproduce a copyrighted work without the permission of the copyright owner, and NARA's determination in this regard is entitled to substantial deference as noted above. *See* 5 U.S.C. § 552(a)(4)(B).

19

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

*Of Counsel:*

KATHRYN ARDIZZONE
*Assistant General Counsel*
*Office of General Counsel, Suite 3110*
*National Archives & Records*
*Administration*
*8601 Adelphi Road*
*College Park, MD 20740*
*(301)-837-1750*
*Kathryn.Ardizzone@nara.gov*

CRAIG H. MISSAKIAN
*United States Attorney*

DANIEL TENNY

 s/ *Amanda L. Mundell*
AMANDA L. MUNDELL
*Attorneys, Appellate Staff*
*Civil Division, Room 7252*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3469*
*Amanda.L.Mundell@usdoj.gov*

December 2025

20

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, appellees state that they know of no related case pending in this Court.

_s/ Amanda L. Mundell_
Amanda L. Mundell

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4881 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Amanda L. Mundell*
Amanda L. Mundell

# CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system.

*s/ Amanda L. Mundell*
Amanda L. Mundell

**ADDENDUM**

**TABLE OF CONTENTS**

5 U.S.C. § 552(a)(3)(A)-(B), (a)(4)(B)...................................................................................A1

17 U.S.C. § 106(1) ..............................................................................................................A2

17 U.S.C. § 108(a), (f)........................................................................................................A2

17 U.S.C. § 501(a)-(b) ......................................................................................................A3

28 U.S.C. § 1498(b) ...........................................................................................................A4

**5 U.S.C. § 552(a)(3)(A)-(B), (a)(4)(B)**

**§ 552. Public information; agency rules, opinions, orders, records, and proceedings**

(a) Each agency shall make available to the public information as follows:

\* \* \*

(3)

(A)  Except with respect to the records made available under paragraphs (1) and (2) of this subsection, and except as provided in subparagraph (E), each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

(B)  In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format. Each agency shall make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section.

\* \* \*

(4)

\* \* \*

(B)  On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action. In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility

under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).

## 17 U.S.C. §§ 106(1), 108(a) & (f)

### § 106. Exclusive rights in copyrighted works

Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

\* \* \*

### § 108. Limitations on exclusive rights: Reproduction by libraries and archives

**(a)** Except as otherwise provided in this title and notwithstanding the provisions of section 106, it is not an infringement of copyright for a library or archives, or any of its employees acting within the scope of their employment, to reproduce no more than one copy or phonorecord of a work, except as provided in subsections (b) and (c), or to distribute such copy or phonorecord, under the conditions specified by this section, if—

**(1)** the reproduction or distribution is made without any purpose of direct or indirect commercial advantage;

**(2)** the collections of the library or archives are (i) open to the public, or (ii) available not only to researchers affiliated with the library or archives or with the institution of which it is a part, but also to other persons doing research in a specialized field; and

**(3)** the reproduction or distribution of the work includes a notice of copyright that appears on the copy or phonorecord that is reproduced under the provisions of this section, or includes a legend stating that the work may be protected by copyright if no such notice can be found on the copy or phonorecord that is reproduced under the provisions of this section.

\* \* \*

**(f)** Nothing in this section—

**(1)** shall be construed to impose liability for copyright infringement upon a library or archives or its employees for the unsupervised use of reproducing equipment located on its premises: Provided, That such equipment displays a notice that the making of a copy may be subject to the copyright law;

A2

**(2)** excuses a person who uses such reproducing equipment or who requests a copy or phonorecord under subsection (d) from liability for copyright infringement for any such act, or for any later use of such copy or phonorecord, if it exceeds fair use as provided by section 107;

**(3)** shall be construed to limit the reproduction and distribution by lending of a limited number of copies and excerpts by a library or archives of an audiovisual news program, subject to clauses (1), (2), and (3) of subsection (a); or

**(4)** in any way affects the right of fair use as provided by section 107, or any contractual obligations assumed at any time by the library or archives when it obtained a copy or phonorecord of a work in its collections.

## 17 U.S.C. § 501(a)-(b)

### § 501. Infringement of copyright

**(a)** Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506), any reference to copyright shall be deemed to include the rights conferred by section 106A(a). As used in this subsection, the term "anyone" includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity.

**(b)** The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it. The court may require such owner to serve written notice of the action with a copy of the complaint upon any person shown, by the records of the Copyright Office or otherwise, to have or claim an interest in the copyright, and shall require that such notice be served upon any person whose interest is likely to be affected by a decision in the case. The court may require the joinder, and shall permit the intervention, of any person having or claiming an interest in the copyright.

A3

**28 U.S.C. § 1498(b)**

**§ 1498. Patent and copyright cases**

**\* \* \***

**(b)** Hereafter, whenever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, by a corporation owned or controlled by the United States, or by a contractor, subcontractor, or any person, firm, or corporation acting for the Government and with the authorization or consent of the Government, the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement, including the minimum statutory damages as set forth in section 504(c) of title 17, United States Code: Provided, That a Government employee shall have a right of action against the Government under this subsection except where he was in a position to order, influence, or induce use of the copyrighted work by the Government: Provided, however, That this subsection shall not confer a right of action on any copyright owner or any assignee of such owner with respect to any copyrighted work prepared by a person while in the employment or service of the United States, where the copyrighted work was prepared as a part of the official functions of the employee, or in the preparation of which Government time, material, or facilities were used: And provided further, That before such action against the United States has been instituted the appropriate corporation owned or controlled by the United States or the head of the appropriate department or agency of the Government, as the case may be, is authorized to enter into an agreement with the copyright owner in full settlement and compromise for the damages accruing to him by reason of such infringement and to settle the claim administratively out of available appropriations.

Except as otherwise provided by law, no recovery shall be had for any infringement of a copyright covered by this subsection committed more than three years prior to the filing of the complaint or counterclaim for infringement in the action, except that the period between the date of receipt of a written claim for compensation by the Department or agency of the Government or corporation owned or controlled by the United States, as the case may be, having authority to settle such claim and the date of mailing by the Government of a notice to the claimant that his claim has been denied shall not be counted as a part of the three years, unless suit is brought before the last-mentioned date.

A4